John D. Fiero (CA Bar No. 136557)
Maxim B. Litvak (CA Bar No. 215852)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
Email: jfiero@pszjlaw.com
       mlitvak@pszjlaw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SANTA ROSA DIVISION**

| | |
|---|---|
| In re:<br><br>**CLEMENT C. CARINALLI AND ANN MARIE CARINALLI,**<br><br>Debtor. | Case No.: 09-12986 (AJ)<br><br>Chapter 11 |
| **OFFICIAL COMMITTEE OF UNSECURED CREDITORS,**<br><br>**Plaintiff**,<br><br>v.<br><br>**KELLY INVESTMENT CO.,<br>KELLY T. SUACCI,<br>KEITH INVESTMENT CO.,<br>KEITH CARINALLI,<br>KERRI INVESTMENT CO.,<br>KERRI A. OLHISER,<br>KEVIN INVESTMENT CO.,<br>KEVIN E. CARINALLI,<br>HEATHER M. CARINALLI,<br>KLEMCO INVESTMENT CO.**, AND<br>**NORTH COAST BANK, A DIVISION<br>  OF AMERICAN RIVER BANK,<br>  SANTA ROSA OFFICE**<br><br>**Defendants**. | Adversary Proc. No. __- _____ (AJ)<br><br>**COMPLAINT FOR: (1) AVOIDANCE OF FRAUDULENT TRANSFERS;<br>(2) AVOIDANCE OF PREFERENTIAL TRANSFERS; (3) DETERMINATION OF NATURE AND EXTENT OF INTERESTS IN PROCEEDS OF SHILOH SALE; (4) TURNOVER OF SUCH PROCEEDS; AND<br>(5) DISALLOWANCE OF INSIDER DEFENDANTS' CLAIMS AGAINST THE ESTATE** |

The Official Committee of Unsecured Creditors (the "Committee"), on behalf of the estate of

Clement C. Carinalli (the "Debtor") and Ann Marie Carinalli (together with the Debtor, the

"Debtors"), alleges and avers as follows for its Complaint against the following, Kelly Investment Co., Kelly T. Suacci, Keith Investment Co., Keith Carinalli, Kerri Investment Co., Kerri A. Olhiser, Kevin E. Carinalli, Kevin Investment Co., Heather M. Carinalli, Klemco Investment Co., North Coast Bank, a Division of American River Bank, Santa Rosa Office.

## JURISDICTION AND VENUE

1. This adversary proceeding is brought pursuant to Rule 7001(1), (2), and (9) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to seek relief in accordance with 11 U.S.C. §§ 541, 542, 547, and 550.

2. This adversary proceeding arises out of and relates to the above-captioned chapter 11 case.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding as to which this Court may enter a final judgment under 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(F), (H), (K), and (O).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a), as this adversary proceeding arises under 11 U.S.C § 101 *et seq*. (the "Bankruptcy Code") or arises under or relates to a case under the Bankruptcy Code which is pending in this district.

## PARTIES

5. The Committee is the duly-authorized representative of the estate for purposes of the claims alleged herein, pursuant to: (a) the Court's order, dated June 1, 2010, approving a *Stipulation Appointing Official Committee of Unsecured Creditors as Estate Representative to (1) Investigate and Pursue Actions Against Insiders and (2) Bring and Resolve Objections to Insider Claims* [Docket No. 363] (the "Stipulation") [Docket No. 369], and (b) the Shiloh Sale Order (as defined below).

6. The Committee is informed and believes that Kelly Investment Co. ("Kelly Investment") is a corporation organized under the laws of the State of California, with its principal place of business in Santa Rosa, California. Kelly Investment is located at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

7. The Committee is informed and believes that Kelly T. Suacci ("Kelly") is an individual and has a business address at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

8. The Committee is informed and believes that Keith Investment Co. ("Keith Investment") is a corporation organized under the laws of the State of California, with its principal place of business in Santa Rosa, California. Keith Investment is located at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

9. The Committee is informed and believes that Keith Carinalli ("Keith") is an individual and has a business address at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

10. The Committee is informed and believes that Kerri Investment Co. ("Kerri Investment") is a corporation organized under the laws of the State of California, with its principal place of business in Santa Rosa, California. Kerri Investment is located at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

11. The Committee is informed and believes that Kerri A. Olhiser ("Kerri") is an individual and has a business address at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

12. The Committee is informed and believes that Kevin Investment Co. ("Kevin Investment") is a corporation organized under the laws of the State of California, with its principal place of business in Santa Rosa, California. Kevin Investment is located at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

13. The Committee is informed and believes that Kevin E. Carinalli ("Kevin") and Heather M. Carinalli ("Heather") are individuals that have a business address at 520 Mendocino Avenue, Suite 250, Santa Rosa, California 95401.

14. The Committee is informed and believes that Klemco Investment Co. ("Klemco") is a corporation organized under the laws of the State of California, with its principal place of business in Santa Rosa, California. Klemco is located at 520 Mendocino Avenue, Suite 250, Santa Rosa,

California 95401. Klemco together with Kelly Investment, Kelly, Keith Investment, Keith, Kerri Investment, Kerri, Kevin Investment, Kevin, and Heather, the "Insider Defendants").

15. The Committee is informed and believes that North Coast Bank, a Division of American River Bank, Santa Rosa Office ("North Coast Bank" and together with the Insider Defendants, the "Defendants"), is a bank with its principal place of business in California. North Coast Bank is located at 90 South Street, Suite 110, Santa Rosa, California 95404.

16. Clement C. Carinalli and Ann Marie Carinalli are the Debtors in this chapter 11 case and the parents of Kelly, Keith, Kerri, and Kevin.

## GENERAL ALLEGATIONS

17. On September 14, 2009 (the "Petition Date"), an involuntary petition was filed by three creditors (the "Petitioners") against the Debtors under chapter 7 of the Bankruptcy Code.

18. On September 29, 2009, the Debtors and the Petitioners agreed to the conversion of the involuntary chapter 7 case to a case under chapter 11 of the Bankruptcy Code, pursuant to which the Debtors became joint debtors-in-possession.

19. The Debtors remain in possession of their estate and continue to operate and manage their business affairs.

20. On October 20, 2009, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code.

21. By virtue of the Stipulation between the Debtors and the Committee, the Committee is authorized to investigate and, if appropriate, to prosecute any estate claims that may exist against insiders pursuant to sections 542, 544, 547, 548, and 550 of the Bankruptcy Code and other bankruptcy or non-bankruptcy law.

22. Pursuant to section 101(31)(A)(i) of the Bankruptcy Code, Kelly, Keith, Kerri, Kevin and Heather are "insiders" of the Debtors because they are relatives of the Debtors. In addition, Kelly Investment, Keith Investment, Kerri Investment, Kevin Investment, and Klemco are insiders because these entities are affiliates of the Debtors or the Debtors' children. The Insider Defendants assert various claims against the estate (as filed and scheduled in the Debtors' case) (collectively, the "Insider Claims").

23.     North Coast Bank is a creditor of the Debtors and also a creditor of certain of the Insider Defendants.  The Committee is authorized under the Shiloh Sale Order (as defined below) to seek a determination of the right and title of the estate, the Insider Defendants, and North Coast Bank to the proceeds of the sale of the Shiloh Property (as defined below).

**The Shiloh Sale Motion**

24.     On April 30, 2010, the Debtors filed their *Motion for Approval of Sale of Real Property (7383 Shiloh Road, Santa Rosa, California)* [Docket No. 313] (the "Shiloh Sale Motion"). Pursuant to the Shiloh Sale Motion, the Debtors sought authorization to sell certain real property and improvements located at 7383 Shiloh Road, Santa Rosa, California (the "Shiloh Property").  The Shiloh Sale Motion proposed to distribute the sale proceeds to the Debtors and the Insider Defendants, or to some extent, to North Coast Bank on account of obligations owed by certain of the Insider Defendants.  The Committee supported the sale of the Shiloh Property, but objected to any distribution of the sale proceeds therefrom to, or for the benefit of, the Insider Defendants, pending further investigation.

25.     On May 26, 2010, the Court entered an order granting the Shiloh Sale Motion [Docket No. 352] (the "Shiloh Sale Order"), but conditioned the distribution of sale proceeds upon:

> (a) notification of a written agreement among the Committee, the Carinalli Parties, and NCB as to the appropriate disbursement of such proceeds, in which event disbursements shall be made in accordance with such agreement; (b) the passage of thirty (30) days following completion of such sale (or such later period as to which the Committee, NCB and the Carinalli Parties may agree, each in their own discretion), *unless a complaint has been filed and served by the Committee prior to the passage of such time period, in which the Committee seeks a determination of the right and title to such proceeds*, in which event such proceeds shall be disbursed to NCB and the Carinalli Parties as would have occurred in the absence of this sequestration order; or (c) the entry of a final order or judgment of this Court determining the appropriate disbursement of such proceeds, in which event disbursements shall be made in accordance with such order or judgment.

Shiloh Sale Order at ¶ 3 (emphasis supplied).  The Shiloh Sale Order is currently on appeal, but has not been stayed.

26. The Committee is informed that the sale of the Shiloh Property closed on July 2, 2010.[1] The sum of approximately $1,917,823 has been segregated from the sale consistent with the terms of the Shiloh Sale Order (the "Shiloh Sale Proceeds").

**The Transfer of the Shiloh Deed of Trust to the Defendants**

27. As represented in the Shiloh Sale Motion, the Shiloh Property was originally owned by Robert W. O'Neel, III and Monique Barron O'Neel (together, the "O'Neels").

28. On or about August 6, 2001, Sonoma National Bank ("Sonoma Bank") made a loan to the O'Neels in the principal amount of $550,000. The loan was memorialized by a note ("Note 1") executed by the O'Neels for the benefit of Sonoma Bank. Note 1 is secured by a deed of trust ("Deed of Trust 1") against the Shiloh Property. The current outstanding balance of Note 1 is approximately $630,000.

29. Sonoma Bank subsequently endorsed Note 1 and assigned Deed of Trust 1 to Kerri and Kelly purportedly in exchange for payment in full of the outstanding obligations under Note 1 at that time. The assignment was recorded on or about March 31, 2009.

30. The Committee is not aware of sufficient evidence to support the Debtors' contention that the money allegedly used to fund the purchase of Note 1 and the rights under Deed of Trust 1 originated with the Insider Defendants.

31. On or about June 29, 2005, the Debtors made a loan to the O'Neels in the principal amount of $1,000,000. The loan was memorialized by a note ("Note 2") executed by the O'Neels for the benefit of the Debtors. Note 2 is secured by a deed of trust ("Deed of Trust 2") against the Shiloh Property.

32. On or about December 5, 2005, the Debtors made an advance to the O'Neels in the principal amount of $1,000,000. The advance was memorialized by a note ("Note 3") executed by the O'Neels for the benefit of the Debtors. Note 3 is secured by Deed of Trust 2.

---

[1] Pursuant to the Shiloh Sale Order, the Committee was required to commence this adversary proceeding prior to the expiration of the 30-day period following the closing of the sale. The Committee continues to investigate other claims and causes of action against the Insider Defendants, or possible additional objections to the claims asserted by the Insider Defendants against the estate. The Committee reserves all rights to amend this Complaint and/or to commence separate actions against any of the Insider Defendants, to the extent warranted.

33. On or about December 20, 2005, the Debtors made an advance to the O'Neels in the principal amount of $500,000. The advance was memorialized by a note ("Note 4") executed by the O'Neels for the benefit of the Debtors. Note 4 is secured by Deed of Trust 2.

34. On or about August 21, 2006, the Debtors made an advance to the O'Neels in the principal amount of $1,000,000. The advance was memorialized by a note ("Note 5" and together with Note 2, Note 3, and Note 4, the "Notes") executed by the O'Neels for the benefit of the Debtors. Note 5 is secured by Deed of Trust 2.

35. In sum, the Debtors made loans to the O'Neels represented by the Notes and secured by the Shiloh Property (*i.e.*, Deed of Trust 2) in the approximate aggregate amount of $3,500,000.

36. The express terms of the Notes reflect that: (a) the Debtors (and not the Insider Defendants) made the loans to the O'Neels, (b) the O'Neels promised to repay the amounts outstanding under the Notes to the Debtors (and not the Insider Defendants), and (c) the O'Neels executed Deed of Trust 2 and the subsequent notices of advances thereunder for the benefit of the Debtors (and not the Insider Defendants).

37. In the Shiloh Sale Motion, the Debtors alleged that the money used to fund the loans to the O'Neels originated with the Insider Defendants, except for approximately 18.286% of such funds that originated with the Debtors. The Debtors also alleged that the money used to fund Kerri and Kelly's purchase of Note 1 and the rights under Deed of Trust 1 originated with those Insider Defendants.

38. The Committee is not aware of sufficient evidence to support the Debtors' contentions that the money allegedly used to fund the loans to the O'Neels and the purchase of Note 1 originated with the Insider Defendants.

39. The Committee is informed and believes that the Debtor had dominion and control over the funds in the Insider Defendants' bank accounts. Specifically, the Debtor executed the checks drawn on the bank accounts of Kerri Investment, Kelly Investment, Keith Investment, and Klemco that were used to fund a portion of the Insider Defendants' alleged share of the Notes totaling in the aggregate amount of $1,365,000.

40. The Committee is informed and believes that approximately $1,000,000 allegedly used to fund the loans to the O'Neels was supplied by way of cashier's checks. The Committee is not aware of sufficient evidence to support the Debtors' contention that these funds originated with the Insider Defendants.

41. The Committee is informed and believes that there was no written agreement between the Debtors and the Insider Defendants regarding the terms and conditions governing the loans to the O'Neels purportedly made by the Insider Defendants.

42. On June 29, 2009, the Debtors assigned 81.714% of their interests in Deed of Trust 2 to the Insider Defendants and allocated such interests amongst the Insider Defendants in proportion to the funds that the Insider Defendants allegedly supplied for the loans that the Debtors made to the O'Neels. The Debtors' assignment as to Deed of Trust 2 was recorded in the official real property records of Sonoma County (the "Sonoma County Records") on July 16, 2010, within the 90 day statutory "preference period."

43. At the time the foregoing transfers occurred, the Debtors were insolvent.

44. The Debtors admit in the Shiloh Sale Motion that on November 4, 2009, after the Debtors' assignment of Deed of Trust 2 and the recordation of such assignment, a public auction occurred pursuant to a power of sale provision in Deed of Trust 2 that resulted in the sale of the Shiloh Property to the Debtors and the Insider Defendants, which was recorded on November 6, 2009. As a result of such foreclosure, Deed of Trust 2 was extinguished and title to the Shiloh Property was transferred to the Debtors and the Insider Defendants. Accordingly, the Insider Defendants did not acquire any ownership interest in, or title to, the Shiloh Property until November 4, 2009.

45. The Debtors admit in the Shiloh Sale Motion that on October 15, 2009, prior to the foreclosure sale referenced above, Kelly Investment attempted to encumber its purported share of the ownership interests in the Shiloh Property by a deed of trust ("Deed of Trust 3") in favor of North Coast Bank. Deed of Trust 3 was intended to secure the repayment of a loan made by North Coast Bank to Kelly Investment in the approximate amount of $925,000. Deed of Trust 3 was recorded on or about December 31, 2009.

46. Similarly, the Debtors admit in the Shiloh Sale Motion that on October 15, 2009, Kevin and Heather attempted to encumber their purported share of the ownership interests in the Shiloh Property by a deed of trust ("Deed of Trust 4") in favor of North Coast Bank. Deed of Trust 4 was intended to secure the repayment of a loan made by North Coast Bank to Kevin and Heather in the approximate amount of $950,000. Deed of Trust 4 was recorded on or about January 15, 2010.

47. North Coast Bank had notice that Kelly Investment, Kevin, and Heather were assigned their respective interests in Deed of Trust 2 on June 29, 2010, as a result of the Debtors' recording of such assignment in the Sonoma County Records.

48. North Coast Bank had notice that an involuntary bankruptcy petition was commenced against the Debtors on September 14, 2009.

49. Accordingly, North Coast Bank had actual or constructive knowledge that the Debtors transferred Deed of Trust 2 to Kelly Investment, Kevin, and Heather during the ninety (90) days prior to the Petition Date, and that such transfers may be avoidable.

## CLAIMS FOR RELIEF

### First Claim for Relief

**(Avoidance of Fraudulent Transfers)**

**11 U.S.C. § 548(a)(1)(B)**

50. The Committee restates and incorporates by reference each and every averment contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

51. At the time of the Debtors' loans to the O'Neels, there is insufficient evidence to support the Debtors' contention that such funds were actually derived from the Insider Defendants. The Committee is informed and believes that the Debtor had dominion and control over the Insider Defendants' bank accounts. As a result, upon the Debtors' assignment of 81.714% of their interests in Deed of Trust 2 and the subsequent recordation of such assignment, the Debtors failed to receive reasonably equivalent value in exchange for such transfer.

52. At the time the of the Debtors' assignment of 81.714% of their interests in Deed of Trust 2 and the subsequent recordation of such assignment within ninety (90) days prior to the

Petition Date, the Debtors were (a) insolvent or became insolvent as a result of the transfer; (b) engaged in or were about to engage in a business or a transaction for which their remaining assets were unreasonably small in relation to the business or transaction; or (c) intended to incur, or believed they would incur debts beyond their ability to pay as such debts matured.

53. Accordingly, the assignment of 81.714% of the Debtors' interests in Deed of Trust 2 and the subsequent recordation of such assignment is avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code. The Committee seeks judgment avoiding the assignment and recordation of the Debtors' 81.714% interests in Deed of Trust 2 in favor of the Insider Defendants, and a claim for the corresponding value or proceeds thereof.

## In Alternative to the First Claim for Relief – Second Claim for Relief

**(Avoidance of Preferential Transfers)**

**11 U.S.C. § 547(b)**

54. The Committee restates and incorporates by reference each and every averment contained in the foregoing paragraphs of this Complaint as though fully set forth herein and pleads this Second Claim for Relief in the alternative and in the event that the Court does not enter judgment in favor of the Committee on the First Claim for Relief.

55. Deed of Trust 2 and the loans secured thereby were at all relevant times property of the Debtors.

56. The Debtors' assignment of 81.714% of their interests in Deed of Trust 2 to the Insider Defendants and the subsequent recordation of such assignment was for the benefit of the Insider Defendants on account of the various advances purportedly made by the Insider Defendants in connection with the Debtors' loans to the O'Neels.

57. The Debtors' assignment of 81.714% of their interests in Deed of Trust 2 to the Insider Defendants and the subsequent recordation of such assignment was purportedly on account of antecedent debts owed by the Debtors to the Insider Defendants before such transfers were made.

58. The assignment of Deed of Trust 2 referenced above occurred on June 29, 2009, within the 90 day statutory preference period prior to the Petition Date.

59. The recordation of the assignment of Deed of Trust 2 referenced above occurred on July 16, 2009, within the 90 day statutory preference period prior to the Petition Date.

60. The Debtors were insolvent at the time they assigned Deed of Trust 2 to the Insider Defendants and recorded such assignment.

61. If the assignment and recordation of Deed of Trust 2 referenced above was not avoided, such result would enable the Insider Defendants to receive more than they would as creditors of the Debtors if (a) the Debtors' case were a case under chapter 7 of the Bankruptcy Code, (b) the assignment and recordation had not been made by the Debtors, and (c) the Insider Defendants were to receive payment on account of such debt to the extent provided by the provisions of the Bankruptcy Code.

62. Accordingly, on behalf of the Debtors' estate, the Committee is entitled to judgment avoiding the assignment and the recordation of the Debtors' 81.714% interests in Deed of Trust 2 in favor of the Insider Defendants, and a claim for the corresponding value or proceeds thereof.

### Third Claim for Relief

### (Recovery of Transfers)

### 11 U.S.C. § 550(a)(1) and (2)

63. The Committee restates and incorporates by reference each and every averment contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

64. The Insider Defendants, as applicable, are the initial and immediate transferees of the Debtors' 81.714% interests in Deed of Trust 2.

65. Accordingly, on behalf of the Debtors' estate, pursuant to section 550(a)(1) of the Bankruptcy Code, the Committee is entitled to recover for the benefit of the estate the proceeds or value of the assignment and recordation of 81.714% of the Debtors' interests in Deed of Trust 2 pursuant to section 550 of the Bankruptcy Code.

66. North Coast Bank is an immediate transferee of certain of the Insider Defendants with respect to Deed of Trust 3 and Deed of Trust 4.

67. The assignment of Deed of Trust 2 to the Insider Defendants was duly recorded with the Sonoma County Records and North Coast Bank is presumed to have notice of such assignment.

68. North Coast Bank is presumed to have notice that the Debtors assigned Deed of Trust 2 to Kelly Investment, Kevin, and Heather within the ninety (90) statutory preference period.

69. Accordingly, on behalf of the Debtors' estate, pursuant to section 550(a)(2) of the Bankruptcy Code, the Committee is entitled to recover for the benefit of the estate the proceeds or value of Deed of Trust 3 and Deed of Trust 4, and any other assignment or pledge by the Insider Defendants in favor of North Coast Bank with respect to the Shiloh Property.

70. The Committee seeks a judgment against the Insider Defendants equal to the value of the Debtors' 81.714% interests in Deed of Trust 2, and the proceeds thereof.

## Fourth Claim for Relief

**(Declaratory Judgment Determining Nature and Extent of Interests in Shiloh Sale Proceeds)**

**Bankruptcy Rule 7001(2) and (9)**

71. The Committee restates and incorporates by reference each and every averment contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

72. On October 15, 2009, Kelly Investment executed Deed of Trust 3 against the Shiloh Property in favor of North Coast Bank.

73. Given the timing of the various transfers relating to the Shiloh Property, Deed of Trust 3 may be invalid.

74. On October 15, 2009, Kevin and Heather executed Deed of Trust 4 against the Shiloh Property in favor of North Coast Bank.

75. Given the timing of the various transfers relating to the Shiloh Property, Deed of Trust 4 may be invalid.

76. The Committee is not aware of sufficient evidence to support the Debtors' contentions that the money allegedly used to fund the purchase of Note 1 originated with the Insider Defendants.

77. The Committee disputes the right and title of the Insider Defendants and North Coast Bank to the Shiloh Sale Proceeds.

78. Accordingly, the Committee seeks a declaratory judgment determining the nature and extent of the respective interests of the estate, the Insider Defendants, and North Coast Bank in the Shiloh Sale Proceeds.

**Fifth Claim for Relief**

**(Turnover of Property of the Estate)**

**11 U.S.C. §§ 541, 542(a)**

79. The Committee restates and incorporates herein by reference each and every averment contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

80. Section 541(a) of the Bankruptcy Code provides that the commencement of a bankruptcy case results in the creation of an estate consisting of the debtor's property "wherever located and by whomever held," including, without limitation, "all legal or equitable interests of the debtor in property as of the commencement of the case."

81. Section 542(a) of the Bankruptcy Code requires an entity in possession, custody, or control of property that the Debtors may use, sell, or lease under section 363 of the Bankruptcy Code, to deliver such property to the Debtors.

82. The Shiloh Sale Proceeds constitute property of the Debtors' estate and are subject to section 542(a) of the Bankruptcy Code.

83. Accordingly, the Committee seeks entry of a judgment directing that the Shiloh Sale Proceeds be turned over to the Debtors' estate.

**Sixth Claim for Relief**

**(Disallowance of Insider Claims)**

**11 U.S.C. § 502(d)**

84. The Committee restates and incorporates by reference each and every averment contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

85. The Committee seeks entry of a judgment disallowing the Insider Claims pursuant to section 502(d) of the Bankruptcy Code unless and until the Insider Defendants have paid all amounts owing to the Debtors' estate.

WHEREFORE, the Committee prays for judgment as follows:

1. For a determination that the assignment of the Debtors' 81.714% interests in Deed of Trust 2 in favor of the Insider Defendants and the subsequent recordation of such assignment is avoidable as a fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code;

2. In the alternative, for a determination that the assignment of the Debtors' 81.714% interests in Deed of Trust 2 in favor of the Insider Defendants and the subsequent recordation of such assignment is avoidable as a preferential transfer under section 547 of the Bankruptcy Code;

3. For a determination that the estate is entitled to recover each of the foregoing transfers or the value or proceeds thereof under section 550 of the Bankruptcy Code;

4. For a determination of the nature and extent of the estate, the Insider Defendants, and North Coast Bank in the Shiloh Sale Proceeds;

5. For a determination that the Shiloh Sale Proceeds shall be turned over to the Debtors' estate;

6. For a determination that the Insider Claims are disallowed pursuant to section 502(d) of the Bankruptcy Code unless and until the Insider Defendants have paid the amounts sought herein;

7. For costs of suit incurred herein and prejudgment interest; and

8. For such other and further relief as the Court may deem just and proper.

Dated: July 30, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By */s/ Maxim B. Litvak*
Maxim B. Litvak
Attorneys for the Official Committee of
Unsecured Creditors